UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 5:24-CR-00079-JKP

BENITO CASTRO

## ORDER DENYING AMENDED MOTION TO SUPPRESS

Before the Court is Defendant Benito Castro's Motion to Suppress, (*ECF No. 43*), to which the Government responded, (*ECF No. 44*), and Defendant replied, (*ECF No. 45*). The Court allowed the parties to submit additional, post-hearing briefing. *See ECF Nos. 63, 65*. For the reasons discussed herein, the Court **DENIES** Defendant's Motion to Suppress.

### BACKGROUND

On May 20, 2023, Defendant checked into a Motel 6 near Fort Sam Houston in San Antonio, Texas, paying to stay in Room Number 240 for approximately one month.[1]

After, the United States Marshals Service ("USMS") from the Northen District of Texas requested assistance from law enforcement in locating Isaiah Trevino, an individual wanted by the Dallas Police Department for homicide. *ECF No. 46-2*. Trevino allegedly used a 9mm firearm to commit the murder and was considered armed and dangerous. *Id*. He also allegedly posted pictures on social media with various guns and narcotics. *Id*.

---

[1] Defendant checked in to the Motel on May 20, 2023, and checked out on June 19, 2023. *See ECF No. 46-1*. The motel's address is 5522 N. Panam Expressway, San Antonio – FT Sam Houston 78218 USA. *Id*.

USMS-Western District of Texas-San Antonio ("USMS San Antonio") assigned Deputy Marshal Joshua Jureczki to the case. *Id*. Marshals from the Northern District of Texas informed USMS San Antonio that Trevino was associated with an older Hispanic male (who was later identified as Ben Marcus Castro, Defendant in this case). *Id*. Defendant is allegedly a member of a violent gang and subsequent investigation by law enforcement determined Trevino was possibly residing with Defendant at the Motel 6 near Fort Sam Houston. *Id*.

On June 15, 2023, Deputy Jureczki established surveillance at the Motel 6 and observed Trevino exiting and entering Room Number 240 using an access or key card. *Id*. Law enforcement officers learned Trevino had been staying with Defendant at the Motel 6 for several days. *Id*. The officers conducted a briefing prior to executing the arrest warrant. *Id*. During the briefing, officers observed Trevino exit and reenter Room Number 240. *Id*.

Officers knocked on the door, announced themselves, stated "Police with a warrant," and then opened the door with a key. *Id*. Officers observed Trevino and Defendant sitting on separate beds and ordered them to come out of the room. *Id*. Defendant was seated on the bed near the door and Trevino was seated on the bed further inside the room, near the bathroom. *Id*. After Defendant and Trevino complied with the officers' command to exit the room, officers detained them using handcuffs. *Id*.

Next, the officers entered the room to clear it and discovered the bathroom door was locked. *Id*. Officers observed a 9mm pistol on the bed Trevino was sitting on and noticed a plastic container with a crystal-like substance inside, which officers believed to be methamphetamine. *Id*. Local law enforcement officials then obtained a search warrant for Room Number 240 which resulted in officers finding forty-six (46) grams of methamphetamine, 2.3 grams of marijuana, and a 9mm Smith & Wesson handgun which was listed as stolen. *Id*.

In Defendant's Motion to Suppress, he challenges the officers' (1) entry into the room to execute the arrest warrant for Trevino and (2) entry into the room to "clear" the room because such conduct did not constitute a permissible protective sweep. *ECF No. 43 at 3–6; ECF No 45*.

## LEGAL STANDARDS AND ANALYSIS

I. **The Officers' Entry to Execute the Arrest Warrant**

The Supreme Court has repeatedly held "that the entry into a home to conduct a search or make an arrest is unreasonable . . . unless done pursuant to a warrant," except when exigent circumstances are present. *Steagald v. United States*, 451 U.S. 204, 211–12 (1981). "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). The Court, however, did not define the "reason to believe" standard.

The Fifth Circuit has distinguished the reason to believe standard from probable cause. In *United States v. Route*, 104 F.3d 59 (5th Cir. 1997), the appellate court stated:

> As distinct from the "probable cause" standard that governs the initial issuance of the arrest warrant and that must be determined by a magistrate, we have defined previously the "reason to believe" standard to "'allow[ ] the officer, who has already been to the magistrate [judge] to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate [judge] and without exigent circumstances.'" *Woods*, 560 F.2d at 665 (quoting *United States v. Cravero*, 545 F.2d 406, 421 (5th Cir.1976), cert. denied, 430 U.S. 983 (1977).

*Id.* at 62. Subsequently, in *United States v. Barrera*, 464 F.3d 496 (5th Cir. 2006), the Fifth Circuit analyzed a series of cases applying the "reason to believe" standard and examined the amount of due diligence required to support a reasonable belief that a defendant lives at and is present within a residence. *Id. at 501–505*.

Here, it is undisputed the officers possessed a valid arrest warrant for Trevino's arrest, and the Government presented evidence establishing Trevino resided in Room Number 240 for several days prior to execution of the arrest warrant. Officers also observed Trevino exit and reenter Defendant's motel room on multiple occasions using a key or access card. The Court therefore concludes officers had reason to believe Trevino, the subject of the arrest warrant, resided within Room Number 240. This provided officers the limited authority to enter the room to execute the arrest warrant.

## II.  The Officers' Protective Sweep

Warrantless entry into a home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 587 (1980). Still, the Fifth Circuit has upheld warrantless protective sweep searches based upon exigent circumstances. *See United States v. Watson*, 273 F.3d 599 (5th Cir. 2001). When officers "create the exigency, [however,] the warrantless activity is *per se* unreasonable and any evidence obtained thereby must be suppressed." *United States v. Webster*, 750 F.2d 307, 328 (5th Cir. 1984). It is the Government's "burden of proving the existence of exigent circumstances." *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006).

### A.  Protective Sweeps

A protective sweep must be a brief and "limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006). "It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Protective sweeps may be appropriate even when an arrest occurs outside the home. *Id.*[2]

### B.  Government's Burden

---

[2] *See also Watson*, 273 F.3d 599; *United States v. Merritt*, 882 F.2d 916, 921 (5th Cir.1989); *Kirkpatrick v. Butler*, 870 F.2d 276 (5th Cir.1989).

To meet its burden, the government must establish "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. "Exigent circumstances include hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Id*.

There is no specific formula for courts to use when determining whether exigent circumstances justify a warrantless entry. *Id*. Courts consider "the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." *Id*. (citing *United States v. Rodea*, 102 F.3d 1401, 1405 (5th Cir. 1996) (internal quotations and citation omitted)). When presented with circumstances in which reasonable minds could differ, courts do not "second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *Id*. (citing *Blount*, 123 F.3d at 838 (internal quotation marks and citation omitted)).

Here, Defendant and Trevino were detained and ultimately arrested outside the motel room. Officers placed the men in handcuffs starting at approximately 1:36 of the bodycam video. Because the officer was using a shield, the Court could hear, but not see, officers handcuffing Defendant and Trevino. The officer placed the shield on the ground outside the door of the motel room at approximately 1:46 on the video. When the officer enters the room, two or three officers can be seen inside the room. *Id*. at 1:50. An officer on the scene requested equipment to "breach" the bathroom door. *Id*. An officer entered the room at approximately 1:53 with a device to breach the locked door. *Id*. The officer used the device to open the door and then immediately left the room. *Id*. at 1:52–2:00. Officers then cleared the room and walked out the door. In total, the

officers are visible in the room for approximately twenty seconds. *Id*. at 1:47–2:06.

Although Defendant and Trevino were detained and ultimately arrested outside the motel room, officers had reasonable suspicion or a reasonable belief that another person could have been in the bathroom behind the locked door. Officers were present at the motel to execute an arrest warrant on an individual suspected of committing murder and considered armed and dangerous.[3] He posted pictures on social media with a variety of handguns and drugs. Officers also knew Trevino was associated with Defendant, a member of a notorious gang. When officers executed the arrest warrant, they observed a 9mm pistol on Trevino's bed and a container with a crystal-like substance in it, which officers reasonably believed was methamphetamine. Reasonable officers could believe someone was present in the room who could harm them. The Court therefore concludes the government met its burden to establish exigent circumstances existed to support a twenty-second protective sweep of the motel room.

    C.    **Protective Sweeps and the Plain View Doctrine**

"A seizure may be justified if the seized items were discovered during the course of a protective sweep while officers looked in places where an individual might be hiding." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998)). "The seizure of obviously incriminating evidence found during a protective sweep is constitutionally permissible pursuant to the plain view doctrine." *Id*. at 369 (citing *Munoz*, 150 F.3d at 411; *see also United States v. Webster*, 750 F.2d 307, 328 (5th Cir.1984).[4]

---

[3] The Court recognizes officers did not have specific knowledge about a potential third person, other than Defendant or Trevino, inside the room. The government does not argue that officers were concerned with the potential destruction of evidence.

[4] Such a warrantless seizure is permissible if: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Buchanan*, 70 F.3d 818, 825–26 (5th Cir.1995) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)). "Once seized, this evidence could not only be introduced at

Here, as discussed above, officers arrived at the motel to execute an arrest warrant on a dangerous murder suspect. Based on officers' investigation, the suspect, Mr. Trevino, was residing in Room 240 for several days. Officers observed Trevino using a key card to enter and exit the room. Officers had information that Defendant, to whom the room was rented, was a member of a dangerous gang. Although Trevino and Defendant were detained and arrested outside of the motel room, officers observed a 9mm pistol on Trevino's bed.

As explained above, officers were allowed to enter the room to conduct a protective sweep because the potential threat they faced was not completely quelled. Reasonable officers encountering a locked bathroom door in a small, enclosed space like a motel room can enter the room and breach the bathroom door to ensure the scene is safe. Satisfied there was no ongoing threat or potential threat, the officers promptly left the motel room.

During their brief entry into the room to conduct the protective sweep, officers observed items they reasonably believed were illegal. Officers lawfully entered the room, saw items in plain view, and the incriminating nature of the items was immediately apparent. The marshals exited the room but stayed on scene until San Antonio police officers arrived to collect or retrieve the items observed in the room. There is no evidence that the marshals manipulated or handled the observed items in any way which would undermine application of the plain view doctrine during the course of the protective sweep in this case.

## CONCLUSION

For all the reasons stated above, the Court to **DENIES** Defendant's Motion Suppress. *See ECF No. 38*.

It is so ORDERED.
SIGNED this 9th day of January, 2026.

---

trial but also used as evidence of probable cause in support of a warrant." *United States v. Jackson*, 596 F.3d 236, 241–42 (5th Cir. 2010).

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE